(C. D. 275)

Dr. GEMMA BARZILAI *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 18, 1940)

*William Whynman* for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is a suit against the United States, arising at the port of New York, in which the plaintiff protests against the action of the collector of customs in refusing to release for delivery certain merchandise contained in nine cases, consisting of 96,000 printed

paper sheets, invoiced as "Micrographic pictures of Ovarian tumors." It appears that the collector refused to release the prints for delivery on the ground that they were not marked so as to indicate the country of their origin.

The merchandise was entered on January 10, 1939, which is after the enactment of the Customs Administrative Act of 1938, and the marking thereof is governed by the provisions of that act. It is claimed in the protest that the prints do not consist of articles within the contemplation of section 304 of the Tariff Act of 1930, as amended in section 3 of the Customs Administrative Act of 1938, and that they are exempt from the marking requirements by article 532 of the Customs Regulations of 1937, as amended in T. D. 49658, which amendment was promulgated after the Customs Administrative Act of 1938 was enacted.

Dr. Gemma Barzilai, the importer, was called as a witness and testified that she is a medical doctor and a professor of medicine, teaching the subjects of obstetrics and gynecology; that, besides practicing medicine and teaching, she has lectured all over Europe; that she made slides, drawings, and pictures of tumors and had published certain pamphlets in which some of the pictures have been printed.

Certain prints which the witness testified contained pictures of tumors of the ovary and were prints similar to those which the importer seeks to have released by the collector, were admitted in evidence and marked "Collective Illustrative Exhibits 1 and 2." They consist of plates having from three to six different figures printed thereon. Collective Illustrative Exhibit 2 contains some photographs in addition to the plates but the photographs contain but one figure. The witness testified that the only difference between the plates in Collective Illustrative Exhibits 1 and 2 and those retained by the collector is that the illustrative exhibits contain different pictures from those in customs custody.

The witness testified further that the illustrative exhibits have been in her possession since the years 1932 to 1936; that she made all the plates; that she made also electroplates which were used in printing the pictures in pamphlets which were published; that she uses the plates in teaching and hands some of them out to her students; that she never sold any of the prints or pamphlets or received anything for them; that the pamphlets are not for sale; that the prints in the collective exhibits have no medical, scientific, or commercial value without some writing or explanation.

On cross-examination the witness testified that she asked B. Hoeber, Inc., Lippincott, and other publishers how much they would ask for printing a book, but she had not given an order for it, and that Mr. Paul B. Hoeber sent a letter to her customhouse broker stating that, if the prints were used in the book, it would not be necessary to

have them marked. On redirect examination the witness testified that she advised B. Hoeber, Inc., and the other publishers that she had electroplates if they wanted them for the publication. The pamphlets referred to by the witness were marked "Illustrative Exhibits A and C." They were offered merely to show that they had been in the possession of the witness. The plaintiff produced also some electroplates having subjects of a similar character to those on the plates and they were marked "Illustrative Exhibit B."

The next witness called by the plaintiff was Dr. Bianca Steinhardt, a doctor of medicine, who testified that she worked with Dr. Barzilai in Vienna in 1932 and 1934 and observed some of the prints in Illustrative Exhibits 1 and 2, and also the pamphlets in Illustrative Exhibits A and C, in the possession of Dr. Barzilai at that time.

The last witness called by the plaintiff was Dr. Greta Stohr, a doctor of medicine and chief pathologist for the Woman's Hospital in New York. The witness testified that she is acquainted with Dr. Barzilai; that the plates in Collective Illustrative Exhibits 1 and 2 have no commercial value; that the pictures are representative research work in the same category as some of the professional equipment or tools of doctors. The witness testified further that she is a pathologist and does research work in the hospital; that she makes slides and takes pictures of them and uses the pictures in diagnoses and that is the work for which Collective Illustrative Exhibits 1 and 2 are used.

Counsel for the plaintiff urges in his brief that the prints involved in this case are professional instruments, or tools of trade, occupation or employment within the meaning of the provisions of paragraph 1747 of the Tariff Act of 1930 and that they are free of duty under that paragraph. That claim is not contained in the protest. The collector has not liquidated the entry and there is no decision involving that claim before the court for consideration. Tools of trade are not specially excepted from the marking requirements by the statute or the regulations.

The main contention of the plaintiff is that the imported articles herein involved are exempt from marking by article 532 of the Customs Regulations of 1937, as amended in T. D. 49658. In article 532 (b) the Secretary of the Treasury excepts from marking the classes of articles described in section 304 (a) (3) of the Customs Administrative Act of 1938. The plaintiff claims particularly that the imported plates are in the classes described in paragraph (F) or (G) of that section, reading as follows:

(F) Such article is imported for use by the importer and not intended for sale in its imported or any other form;

(G) Such article is to be processed in the United States by the importer or for his account otherwise than for the purpose of concealing the origin of such article

and in such manner that any mark contemplated by this section would necessarily be obliterated, destroyed, or permanently concealed;

As to the claim under paragraph (F), the record shows that the plates in Collective Illustrative Exhibits 1 and 2 are used by the plaintiff at lectures and are distributed to the students in the classes in which Dr. Barzilai is the teacher. No testimony was introduced showing that the 96,000 imported plates which the collector has in his possession were intended for the same use as the illustrative exhibits. The witness did not state how the plates in question were to be used. Her testimony was limited to the use of the illustrative exhibits. Counsel for the plaintiff asserted at the hearing that the imported plates and the plates in the illustrative exhibits are identical, but the plaintiff did not so testify, as shown by the following excerpt from the record:

Q. Doctor, the plates that the Government are retaining are somewhat like, but different types to these that I showed you, is that correct?—A. Yes.

\* \* \* \* \* \* \*

Q. And the merchandise the Government is retaining is substantially like these?—A. All like those, but different kinds of tumors.

Q. Different colors, or different types, is that correct?—A. Yes.

Witness Steinhardt testified that the plates in Collective Illustrative Exhibits 1 and 2 are used in making diagnoses. The witness did not testify that she saw the 96,000 plates which the importer seeks to have the collector release for delivery without marking and her testimony does not relate to that merchandise. The invoice shows that the shipment consisted of 1,500 of each subject. It is obvious that a doctor would not require 1,500 prints of a picture solely for making a diagnosis.

Counsel for the defendant urges that the plates can not come within paragraph (F), above quoted, as they were imported for sale, as indicated by the fact that the importer intends to have a book printed in which the pictures will be reproduced. Although the plaintiff admitted that she had asked certain publishers what it would cost to print the book, she testified that she informed them that she has electroplates for use in printing the pictures. We find that the testimony does not support the contention of the defendant that the plaintiff attempted to sell the plates.

In the case of *Ruffner, McDowell & Burch, Inc.* v. *United States*, T. D. 47135, the court considered the question of whether or not mineral water in bottles which had been sent as a gift to an importing company for free distribution among its members and their friends was exempt from the marking requirement by virtue of article 513 (3) of the Customs Regulations of 1931 which excepted the following classes of articles from marking:

(3) Articles of trifling value or for the personal use of the importer or for use in his home, factory, or place of business and not intended for sale.

The articles in that suit were not intended for sale but the court held that they were not exempt from marking by the exception of "articles * * * for the personal use of the importer or for use in his home, factory, or place of business." The record in this case does not indicate that the printed plates in the illustrative exhibits are intended for use in a manner essentially different from the use of the mineral water in the case cited, that is, they were not imported solely for the use of the importer for, like the mineral water, ultimately they will fall into the hands of others—the students in the plaintiff's classes. As the record does not establish how the plates herein involved are intended to be used, there is nothing before us to prove that they were imported "for use by the importer" within the meaning of that language in section 304 (a) (3) (F) of the Customs Administrative Act of 1938.

As to the claim under paragraph (G), no evidence was introduced tending to show that the plates are to be processed in the United States by the importer or for her account. The plaintiff's contention is therefore unsupported in regard to the claim under that paragraph.

The protest is overruled. Judgment will be entered in favor of the defendant.