(C.D. 2412)

CARGOES BY CARTER
JAMES LOUDON & CO., INC. } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 17, 1963)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman* and *Charles P. Deem*, trial attorneys), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: Plaintiffs imported from Papeete, in Tahiti, merchandise described in the entries as "Rurutu hats as harvest hats." Admittedly, they were articles of foreign origin that were not marked to indicate the country of origin. The collector assessed regular duties at the rate of 15 per centum ad valorem, which are not in dispute, and also 10 per centum as additional duties for failure to mark the merchandise with the country of origin. Plaintiffs protested the additional marking duties of the two entries, 1796 and 42957.

When the protest was called for trial, defendant moved to dismiss the protest insofar as it relates to entry 42957, on the ground that protest was not filed within 60 days after liquidation of that entry. Counsel for plaintiffs conceded the untimeliness of the protest as to entry 42957, and the trial judge granted the motion. Judgment will enter severing entry 42957 and dismissing protest as to that entry.

When the protest was transmitted to the court by the acting deputy collector at Los Angeles, he reported, in accordance with section 17.2(a), Customs Regulations, T.D. 54080, that at the time the protest was filed the agent or attorney who made, signed, and filed the protest was not named in a power of attorney authorizing such action. Therefore, since it had not been established that the protest was duly filed,

pursuant to section 514, Tariff Act of 1930, the collector did not review and either modify or affirm the protested decision.

Our first duty is to ascertain whether the protest, as to entry 1796, was duly filed.

On trial plaintiffs seem to have done nothing about clearing up what might be a fatal procedural defect. However, defendant adduced, on cross-examination of Mr. Robert H. Carter, owner of Cargoes by Carter, the importer of the merchandise, the fact that James Loudon & Co., Inc., the signer of the protest as attorney in fact for Cargoes by Carter, was their attorney in fact. The examination on this point, Mr. Braverman examining Mr. Robert H. Carter, was as follows:

R. XQ. Who is James Loudon & Company Inc.?—A. My Customs broker.

R. XQ. Do they hold an attorney-in-fact from Cargoes by Carter?—A. Yes.

R. XQ. I show you this document dated September 29, 1958, relating to the importation presently at hand. Do you know Mr. Eldon T. Chown?—A. I know of him.

R. XQ. Is he an authorized attorney for Cargoes by Carter?—A. Mr. Chown is an employee of James Loudon & Co.

R. XQ. Who in turn holds the power of attorney from you?—A. True. [R. 17, 18.]

While exhibit B was not received in evidence, and therefore is not part of the record before us, the uncontradicted testimony elicited by defendant, as above recited, establishes the fact necessary to meet the collector's objection. We find that as to entry 1796 the protest was duly filed under the provisions of section 514. We proceed, then, to consideration of the protested decision, namely, assessment of additional marking duties on the merchandise of that entry.

The issue raised by the protest is stated therein, as follows:

Merchandise comprize [sic] of unfinished Tahitian hat bodies and are sold to manufacturers of hats who are aware of its origin. We have also furnished to the Collector of Customs, letters from manufacturers of hats to substantiate the above statement. We therefore contend marking of these hat bodies should have been waived under Sec 11.10 C.R. or 11.10(d). Letters were submitted [sic] to Custom with application for relief on Dec. 21, 1959 or before liquidation of both entries #42957 of 6/16/58 and #1796 of 7/14/58. We respectfully request a decision in favor of importer.

Some of the above language is argumentative or evidentiary. The *contention* of the protest is stated to be that "marking of these hat bodies should have been waived under Sec 11.10 C.R. or 11.10(d)."

There is no provision of the Customs Regulations numbered section 11.10(d). There are only section 11.10 (a) and (b), both pertaining to exceptions to the marking requirements. From proofs adduced on trial and arguments advanced in the brief submitted by counsel to

plaintiffs, it appears that plaintiffs rest their case chiefly on the following provision of section 11.10 (a) :

\* \* \* An article which is to be processed in the United States by the importer or for his account shall not be considered to be within the specifications of section 304 (a) (3) (G) if there is a reasonable method of marking which will not be obliterated, destroyed, or permanently concealed by such processing.

It appears that this merchandise was not processed either by the importer or for his account, but was sold to others, who processed the imported hat bodies. Evidence was adduced by plaintiffs to show the difficulties of marking, in the light of the method used to process these hat bodies.

But it should be noted that this difficulty of marking, as stated in section 11.10 (a), Customs Regulations, relates solely to imported articles which are to be processed in the United States by the importer or for his account, for which there is statutory exemption from marking under section 304 (a) (3) (G), Tariff Act of 1930, as amended. All that section 11.10 (a), Customs Regulations, does with respect to the difficulty of marking on which plaintiffs rest their argument, is to provide that even when the imported article is to be processed by the importer or for his account, there shall be no exemption from the marking requirement if there is a reasonable method of marking which will not be obliterated, destroyed, or permanently concealed by such processing. The regulation, in that regard, merely clarifies in respect to obliteration, destruction, or permanent concealment through processing, the exemption language of the statute.

There is nothing in section 11.10, on which plaintiffs rely, and there could not effectively be, any provision extending the statutory exemption to articles processed in the United States other than by the importer or for his account. That is as far as Congress went in creating this particular exemption from the marking requirement. *Dr. Gemma Barzilai* v. *United States*, 4 Cust. Ct. 25, C.D. 275.

As to plaintiffs' argument that there is exemption under section 304 (a) (3) (H), as amended, because the ultimate purchaser, by reason of the character of the article, must necessarily have known the country of origin even though the article was not marked, we agree with defendant that the record is barren of proof that ultimate purchasers had such knowledge. The brief filed in plaintiffs' behalf states that the record "clearly" shows "that the manufacturers to whom Mr. Carter sells these hat bodies are well aware that the country of exportation of these hat bodies is Tahiti," but we are not cited, as is usual in briefs filed by counsel, to the place in the record where there is shown anything sufficient for us to find "awareness," or even to find that such manufacturers were the ultimate purchasers of the imported merchandise, in the statutory sense. Nor is Mr. Carter's testimony

persuasive that these hat bodies are so utterly unique and unlike hat bodies processed from other leaves of the palm family grown elsewhere, that every one would know they come from Tahiti.

The protest as to entry 42957 is severed and dismissed.

The protest as to entry 1796 is overruled.

Judgment will enter accordingly.